IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| M. DIANE KOKEN,<br><br>                                    Plaintiff,<br><br>          v.<br><br>AON RISK SERVICES, INC. OF VIRGINIA, et al.,<br><br>                                    Defendants. | Civil Action Number 3:05CV522-JRS |

## <u>MEMORANDUM OPINION</u>

THIS MATTER comes before the Court on Defendant Aon Risk Services, Inc. of Virginia's ("Aon") Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, Aon's Motion to Dismiss is GRANTED in part, and DENIED in part.

## I.

Plaintiff M. Diane Koken is the Insurance Commissioner of the Commonwealth of Pennsylvania and, pursuant to Article V of the Insurance Department Act of 1921, 40 P.S. §§ 221.1–.63, can be appointed as the statutory liquidator to represent the interests of insurance companies in Pennsylvania liquidation proceedings. Legion Insurance Company ("Legion")[1] is presently involved in liquidation proceedings in Pennsylvania, seeking to recover from Aon more than $75,000 in insurance premiums and "other amounts due." <u>See</u> Compl. <u>passim</u>. In an Order of Liquidation (the "Liquidation Order")

---

[1] The Complaint also names Villanova Insurance Company ("Villanova") as one of the parties on whose behalf Koken brings this action. Koken's Memorandum in Opposition to the instant Motion, however, discusses only Legion and its claims. At the hearing for this Motion on December 21, 2005, counsel for Koken indicated that Koken had agreed to withdraw its claims made on Villanova's behalf.

entered by the Commonwealth Court of Pennsylvania on July 25, 2003, Koken was appointed as Legion's liquidator and now brings suit on Legion's behalf.

This litigation stems from a contract between Legion and Aon, an insurance producer. Legion and Aon entered into a Management Agreement ("the Contract") dated July 6, 1998, the validity of which is not in dispute.[2] In the Contract, Aon agreed to market and sell Legion insurance policies, as well as collect premiums due on those policies. Aon further agreed to remit both the collected and uncollected premiums from those policies to Legion.

The language of the Contract describes the fiduciary nature of the relationship between Legion and Aon. One provision of the Contract explains that "[a]ll premiums collected by [Aon] are to be held in a fiduciary capacity for [Legion]." Mgmt. Agreement § 9(C). Koken characterizes these premiums as "premium trust funds" which, Koken states, are the "property of [Legion] held in trust by Aon." Compl. ¶¶ 14–15. In addition to the express language of the Contract, the Complaint refers to "Pennsylvania and other applicable law" as additional bases for the fiduciary duty Aon allegedly owes to Legion and Koken to collect and remit premiums which are due. Id. ¶ 18. The Contract also provides that Legion appoints Aon as its "legal representative and true and lawful attorney" to act on Legion's behalf in "obtaining, procuring, underwriting and servicing" insurance policies. Mgmt. Agremeent § 2(A). This appointment, however, is limited to the context of aviation coverage, and Aon's authority "shall be exercised only in accordance with the terms of the [Contract]." Id. § 2(B).

On March 28, 2002, the Commonwealth Court of Pennsylvania entered an Order of Rehabilitation ("Rehabilitation Order"), placing Legion into rehabilitation. Appointing Koken as Legion's rehabilitator, the Rehabilitation Order directed all persons who sold Legion's insurance

---

[2] The Contract provides that its provisions shall be governed by Pennsylvania law.

policies and/or were required to collect premiums on Legion's behalf to account for and pay the premiums and related commissions directly to Koken. The Liquidation Order entered over a year later declared Legion to be insolvent and directed Koken to take possession of Legion's rightful assets. Pursuant to 40 P.S. § 221.35, upon a declaration of insolvency, all persons responsible for the payment of premiums to the insolvent party are obligated to pay any unpaid premiums (and any commissions derived therefrom) to the statutory liquidator without any credits or setoff.

Koken alleges that Aon failed to collect premiums from "various customers" who purchased Legion insurance policies and, under the Contract, is now liable for those uncollected sums. Pl.'s Corrected Mem. Opp'n 4. Koken also states that Aon did collect premiums on certain Legion policies but has "improperly retained" unspecified amounts that are now due to Koken as Legion's liquidator. Id. Filed on July 25, 2005, Koken's five-count Complaint asserts claims for:

Count One: **Breach of Contract**

Count Two: **Breach of Fiduciary Duty**

Count Three: **Negligence**

Count Four: **Unjust Enrichment**

Count Five: **Demand for Accounting**

On November 10, 2005, Defendant Aon filed the instant Motion to Dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff will not be able to prove any set of facts that would entitle the plaintiff to relief. See Conley v. Gibson, 355 U.S. 41, 45–46 (1957). In analyzing a 12(b)(6) motion

for failure to state a claim, a court must "accept as true the factual allegations of the challenged complaint" and "view those allegations in the light most favorable to the plaintiff." See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). If the complaint makes any legal conclusions, however, these conclusions need not be accepted as true. See Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217–18 (4th Cir. 1994). In shaping its ruling, a court can rely upon only the allegations set forth in the complaint, as well as any documents attached as exhibits or incorporated by reference. See, e.g., Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005). Fundamentally, a complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests" so as to create a factual basis sufficient to enable the defendant to prepare a response. See Conley, 355 U.S. at 47.

## III.

### A.   Count One: Breach of Contract

Aon's argument in support of dismissing Count One does not attack the validity of the Contract, but, instead, questions the sufficiency of the Complaint's allegations. Under Pennsylvania law, a plaintiff must plead the following elements to properly establish a claim for breach of contract: 1) the existence of a valid contract; 2) the breach of a duty imposed by the contract; and 3) damages resulting from that breach. See, e.g., Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). Aon's principal criticism of Count One concerns the Complaint's lack of specificity in describing the "who-what-when-where" of the alleged breach of contract. Def.'s Br. Supp. 6. As Aon contends, the Complaint "does not state who [Aon] failed to collect premiums from, what type of premium is referenced (e.g., earned or unearned), when this failure to collect occurred, and where any of these acts or failures to act took place." Id. Aon also highlights the fact that Koken did not attach

4

the contract at issue to her Complaint and urges the Court to hold Koken "to the four corners of her Complaint."  Def.'s Reply Pl.'s Mem. Opp'n 3.

First, to briefly address the latter argument, Aon's failure to attach the Contract to her Complaint does not render Count One fatally flawed.  It is well-established that a district court ruling on a 12(b)(6) motion to dismiss may consider documents "sufficiently referred to in the complaint" whose authenticity is not disputed, even if such documents are not attached to the complaint.  See, e.g., Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) (affirming the district court's decision to, in ruling on a 12(b)(6) motion to dismiss, consider a letter that was attached to the plaintiff's memorandum in opposition to the motion to dismiss and was referred to throughout the plaintiff's brief).

Here, Koken's Complaint describes an "agreement" entered into by Legion and Aon.  The Complaint repeatedly refers to Aon's obligations under this agreement, and Count One's claims specifically state that "Aon . . . breached the agreement with Legion."  Compl. ¶¶ 27–28.  Furthermore, Koken attaches a copy of the Contract between Legion and Aon to her Corrected Memorandum in Opposition to the instant Motion as exhibit A.  The authenticity of this document is not in dispute.  As such, it is proper for the Court to consider the Contract in ruling on the instant Motion.

With respect to Aon's main argument, despite the lack of details contained in the Complaint's breach of contract allegations, the Court finds that Count One does state a claim sufficient to meet the liberally construed "notice" pleading requirements of Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Modern federal courts routinely explain that a complaint "need be phrased only in general terms sufficient to put the defendants on notice as to the nature of the claims

being asserted against them." <u>Cramer v. Gen. Tel. & Elecs. Corp.</u>, 582 F.2d 259, 272 (3d Cir. 1978).

After all, "[i]t is the function of discovery to fill in the details, and of trial to establish fully each element

of the cause of action." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 790 (3d

Cir. 1984).

The Complaint has met the requirements for pleading a breach of contract under Pennsylvania

law. Koken alleges: 1) the existence of a valid contract (the Contract between Legion and Aon which

is attached to Koken's Corrected Memorandum in Opposition); 2) the breach of a duty imposed by the

contract (failing to pay premiums—both collected and uncollected—owed to Legion and Koken); and

3) resulting damages (allegedly in excess of $75,000). <u>See</u> Compl. ¶¶ 27–29. Granted, many questions

undoubtedly remain as to the specifics of these allegations. The Court is satisfied, however, that these

are the types of questions that could be answered through the discovery process. Accordingly, the Court

will deny Aon's Motion to Dismiss at to Count One.

### B.   <u>Counts Two and Three</u>: Breach of Fiduciary Duty and Negligence

Aon moves the Court to dismiss Counts Two and Three based primarily on the "gist of the

action" doctrine recognized under Pennsylvania law. In response, Koken argues that the duties Aon

owes to Koken and Legion are derived from not only the Contract, but also from Pennsylvania common

law principles. Koken further argues that she should be allowed to at least alternatively plead tort

claims under Federal Rules of Civil Procedure 8(a) and 8(e)(2).

To be clear, Pennsylvania courts do allow tort recovery based on an underlying breach of

contract when "the [allegedly tortious] wrong ascribed to the defendant is the gist of the action, the

contract being collateral." <u>Pittsburgh Constr. Co. v. Griffith</u>, 834 A.2d 572, 582 (Pa. Super. Ct. 2003).

Similarly, under Federal Rule of Civil Procedure 8(e)(2) and some Pennsylvania case law precedent,

a plaintiff may simultaneously plead alternative theories of liability.  For example, Koken cites a case in which a federal court in Pennsylvania held that a party could plead an alternative tort claim simultaneously with a breach of contract claim.  See Berger & Montague, P.C. v. Scott & Scott, LLC, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) (holding, within the context of a law firm suing to recover legal fees in which it had a property interest, that the plaintiff could simultaneously plead breach of contract and conversion claims).

Nevertheless, Aon correctly relies on the gist of the action doctrine to support its Motion to Dismiss as to Counts Two and Three.[3]  Despite the support which the Berger & Montague decision seemingly lends to Koken's alternative pleading arguments, that case was decided within a rather narrow factual context.  Furthermore, as explained below, numerous courts in Pennsylvania have recently outlined the proper application of the gist of the action doctrine in granting Rule 12(b)(6) motions to dismiss tort claims asserted simultaneously with breach of contract claims.  Courts have held that the restriction on tort claims imposed by the gist of the action doctrine is consistent with the right to plead in the alternative under Rule 8(e)(2).  See, e.g., Hospicomm, Inc. v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 584 (E.D. Pa. 2004) ("While Rule 8(e)(2) allows pleading alternative forms of relief, we are satisfied that any duty owed to Plaintiff . . . flowed solely from contract. . . . Thus we believe that the 'gist of the action doctrine' applies in this case, and Plaintiff's tort claims must be dismissed.").

---

[3] The gist of the action doctrine is conceptually similar to the economic loss doctrine, which is frequently invoked by courts across the United States and is arguably applicable in the present case.  Under circumstances roughly similar to those presently before this Court, however, Pennsylvania courts have opted to apply the gist of the action doctrine, explaining that the economic loss doctrine "developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself."  Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 n.11 (3d Cir. 2001); see also, e.g., Hospicomm, Inc. v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 583 n.4 (E.D. Pa. 2004).  Accordingly, the Court views the gist of the action doctrine as the most appropriate mechanism for analyzing Koken's tort claims.

In recognizing the gist of the action doctrine, Pennsylvania courts warn that a court should be "cautious about permitting tort recovery based on contractual breaches."   Pittsburgh Constr. Co., 834 A.2d at 581.   Plaintiffs are prohibited from alleging tort claims which "merely reiterate[] . . . [a] [d]efendant's purportedly contractual defaults."   Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 402 (E.D. Pa. 2002).   The applicability of the gist of the action doctrine hinges upon "whether the basis of the plaintiff's allegations sound[s] in contract or tort." Hospicomm, 338 F. Supp. 2d at 583.   A theory of recovery sounds in contract when the duties allegedly breached are "imposed by mutual consensus." Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001) (quoting Redev. Auth. of Cambria County v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. Ct. 1996) (citation omitted)).   Stated differently, "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts.'" Id. at 104 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. Ct. 1992)).   On the other hand, a claim sounds in tort when the duties allegedly breached arise not out of contractual obligations, but, rather, out of "duties imposed by law as a matter of social policy." Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1165 (E.D. Pa. 1978).   Importantly, even if a plaintiff alleges the existence of some social duty imposed by the common law, a tort claim may still be barred if the success of the tort claim is ultimately dependent upon the validity and/or terms of a contract.   See Williams v. Hilton Group, PLC, 261 F. Supp. 2d 324, 328 (W.D. Pa. 2003).

As discussed below, Koken's tort claims in Counts Two and Three of the Complaint sound in contract and will be dismissed.

## 1.   Breach of Fiduciary Duty

Koken implicitly concedes that her breach of fiduciary duty claim in Count Two sounds in contract.   In her Corrected Memorandum in Opposition, Koken states that "the breach of contract claim

involves the same underlying facts, theories, discovery, and damages as the breach of fiduciary duty claim." Pl.'s Corrected Mem. Opp'n 9.  This acknowledgment that Koken's breach of fiduciary duty claim shares the same theories as the breach of contract claim, of course, begs the question—if the contract were deemed invalid and/or no breach of contract were found, how would Aon owe any duty to Legion and Koken?  Koken's own admissions, therefore, cast a strong suspicion that the breach of fiduciary duty theory is dependent upon the existence and breach of a contract.

Koken tries to rehabilitate her breach of fiduciary duty claim by referencing the assertion in her Complaint that Aon's fiduciary duties are set forth in the Contract *and* "under Pennsylvania and other applicable law." Compl. ¶ 31.  At the hearing for this Motion, counsel for Koken, without referencing any cases in support, represented to the Court that a fiduciary duty exists under Pennsylvania common law in the context of an insurance relationship.  The Court's own research reveals that this assertion is correct, but only to a limited extent.  Pennsylvania common law undoubtedly recognizes the fiduciary nature of the relationship between an insurer and an insured under certain circumstances.  See, e.g., Nelson v. State Farm Mut. Auto. Ins. Co., 988 F. Supp. 527, 532 (E.D. Pa. 1997) ("The insurer's duty of good faith . . . is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement on behalf of the insured."); Burton v. Republic Ins. Co., 845 A.2d 889, 899 (Pa. Super. Ct. 2004) ("Under Pennsylvania jurisprudence, insurers owe a duty of good faith and fair dealing to their insureds. . . . [This] covenant arises from the nature of insurance contracts and the fiduciary relationship between an insurance company and its insureds.") (citations omitted).

The relationship between Legion and Aon, however, was not a typical insurance relationship. Their relationship formed after two sophisticated parties in an arms-length transaction negotiated a contract, pursuant to which Aon would market and sell Legion insurance policies, as well as collect and

remit premiums due on those policies.   Koken has not provided the Court with any case law demonstrating a Pennsylvania common law basis for a breach of fiduciary duty claim under these specific circumstances.[4]   This is, perhaps, because, "[t]ypically, a breach of fiduciary duty claim will survive the gist of the action doctrine only where the fiduciary relationship in question is *well-established and clearly defined* by Pennsylvania law or policy."  See Ginley v. E.B. Mahoney Builders, Inc., 2005 U.S. Dist. LEXIS 118, at *8 (E.D. Pa. Jan. 5, 2005) (emphasis added); see also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104–05 (3d Cir. 2001) (recognizing, in the context of a gist of the action doctrine analysis, a fiduciary relationship between joint venturers, as well as majority and minority shareholders); Koken v. Steinberg, 825 A.2d 723, 729–32 (Pa. Super. Ct. 2003) (explaining that an accounting firm owed a fiduciary duty to a Pennsylvania insurance company in carrying out auditing and actuarial tasks).  The parties' relationship does not appear to give rise to a "well-established and clearly-defined" fiduciary duty under Pennsylvania common law.  Instead, the existence of such duty is dependent upon the relevant language in the Contract which expressly defines the terms of Aon's role as a fiduciary.  See Mgmt. Agreement § 9(c).  Viewing Count Two's claim for breach of fiduciary duty as a mere restatement of Count One's claim for breach of contract, the Court will dismiss Count Two of the Complaint.

---

[4] Out of all the briefing done by the parties, Aon cited the most factually relevant case that, while not entirely on point, does support its opposition to Koken's breach of fiduciary duty claim. See Mid-Continent Ins. Co. v. Packel, 2001 U.S. Dist. LEXIS 24204 (E.D. Pa. Oct. 25, 2001).  In Mid-Continent, one of the defendants had agreed to act as an insurance agent for the plaintiff insurance company. Id. at *3.  Under the contract, Defendant would "solicit insurance from customers, collect the premiums, and forward the premiums to [Plaintiff]." Id.  When Defendant failed to fulfill its contractual obligations, Plaintiff sued for breach of contract, as well as the tort of wrongful conversion. Id. at *12–13.  Applying the gist of action doctrine, the court explained that "the alleged conduct giving rise to [Plaintiff]'s breach of contract claim [was] not in any sense 'collateral' to the alleged conduct giving rise to the . . . [tort] claim." Id. at *13.  The court concluded that "Plaintiff's remedy [was] in contract." Id.

**2.    Negligence**

Count Three fails to state a claim for many of the reasons already explained.  See supra § III.B.

Again, Koken implicitly concedes that her negligence claim in Count Three sounds in contract by

stating that, "as was the case with the breach of fiduciary duty claim, the negligence claim involves the

same underlying facts, theories, discovery, and damages as the breach of fiduciary duty claim [sic]."

Pl.'s Corrected Mem. Opp'n 9.  Beyond the right to plead in the alternative under Federal Rule of Civil

Procedure 8(e)(2), Koken provides no real argument to support the co-existence of her breach of

contract and negligence claims.  As mentioned earlier, however, the application of the gist of the action

doctrine has been interpreted to be consistent with Rule 8(e)(2).  See supra § III.B.

The law in Pennsylvania is clear.  Pursuant to the gist of the action doctrine, a plaintiff is barred

from alleging essentially the negligent performance of contractual duties.  See Quorum Health

Resources, Inc. v. Carbon-Schuylkill Cmty. Hosp., Inc., 49 F. Supp. 2d 430, 432 (E.D. Pa. 1999)

(dismissing a counterclaim for negligence that failed to allege "any additional or different facts than

those in the breach of contract counterclaim").  Permitting a plaintiff to claim negligent performance

of contractual duties would not only "vitiate the division between tort and contract," but, even more

problematic, "all breaches of contract would constitute negligen [ce]."  Blue Mountain Mushroom Co.

v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 403 (E.D. Pa. 2002).

The Court is confronted with this same issue when it considers Koken's negligence claim.  As

asserted in the Complaint, Aon had a contractual duty to market and sell Legion insurance policies.

Under the Contract, Aon would then have to collect and remit premiums due on those policies to

Legion.  Count One of the Complaint asserts that Aon, by not paying all necessary premiums and other

amounts to Legion, breached the Contract.  Mirroring the breach of contract claim, Koken's negligence

claim in Count Three asserts that Aon was negligent in "failing to pay premiums and other amounts due

to Legion and [Koken]." Compl. ¶ 37. Accordingly, Count Three must, pursuant to the gist of the action doctrine, be dismissed as a tort-disguised duplicate of Koken's breach of contract claim.

### C. Count Four: Unjust Enrichment

Koken's unjust enrichment claim in Count Four must also be dismissed. Pennsylvania courts unequivocally hold that a claim for "unjust enrichment may arise only when a transaction of the parties *not otherwise governed by an express contract* confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value." Villoresi v. Femminella, 856 A.2d 78, 84 (Pa. Super. Ct. 2004) (emphasis added); see also Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501, 507 (Pa. Super. Ct. 2003); Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) ("[W]e may not make a finding of unjust enrichment . . . where a written or express contract between parties exists.").

Koken again contends that, under Federal Rule of Civil Procedure 8(e)(2), she can plead a claim for unjust enrichment as an alternative to her breach of contract claim. It is true that Pennsylvania courts have acknowledged a plaintiff's right to alternatively plead a claim for unjust enrichment simultaneously with a breach of contract claim. See, e.g., Halstead v. Motorcycle Safety Found., Inc. 71 F. Supp. 2d 455, 459 (E.D. Pa. 1999). The right to simultaneously plead breach of contract and unjust enrichment claims ceases, however, when there has been a "finding of a valid contract." Id.; see also Dalicandro v. Legalgard, Inc., 2004 U.S. Dist. LEXIS 2253, at *49 (E.D. Pa. Jan. 21, 2004) (denying a Rule 12(c) motion for judgment on the pleadings and allowing a plaintiff to plead both a breach of contract and an unjust enrichment claim because there "ha[d] as yet been no finding as to the existence of the contract"); United States v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) ("[U]nder Pennsylvania law, a contract prevents a party from making a claim of unjust enrichment; recovery is limited to the measure provided for in the contract.").

12

The Court finds that a valid written contract does exist between Legion and Koken. Not only does the Complaint refer to an "agreement," but Koken attaches Legion and Aon's written and signed Management Agreement to her Corrected Memorandum in Opposition. Most importantly, in its Reply Brief, Aon attacks not the Contract itself, but, rather, the sufficiency of the Complaint's allegations that Aon breached the Contract. See Def.'s Reply Pl.'s Mem. Opp'n 3–5. Furthermore, Aon repeatedly references "the contract," and not the "*alleged*" contract. Id. at 3–9. In arguing for the dismissal of Counts Two through Five, Aon even quotes from the Contract to demonstrate that the parties' relationship is governed by the Contract's provisions. Id. at 7. It is clear to the Court that both Koken and Aon acknowledge the validity of the Contract. Because the Court finds that a valid written contract exists, Koken cannot proceed with her unjust enrichment claim. As such, Count Four will be dismissed.

### D.   <u>Count Five</u>: Demand for Accounting

Finally, Count Five of the Complaint demands an accounting so that Koken can ascertain "the precise amount of funds that Legion is entitled to receive from Aon and other entities or individuals to whom Aon may have improperly transferred funds." Compl. ¶ 48. Koken argues that a demand for an accounting may stand as an independent cause of action in Pennsylvania. In opposition, Aon argues that an accounting is more appropriately sought as a remedy. Aon further opines that, because the demand for an accounting relates directly to several provisions in the Contract, Count Five should be dismissed as duplicative.

Pennsylvania case law guidance is scant as it relates to the viability of a demand for an accounting asserted as an independent cause of action.[5] For support, the sole Pennsylvania case which

---

[5] Courts in other states offer contradicting views. <u>Compare, e.g.</u>, <u>Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano</u>, 2005 U.S. Dist. LEXIS 14700, at *5 (S.D.N.Y. July 25, 2005) ("'[An] accounting may be pursued as a separate cause of action or as incidental to some other claim.'") (citation omitted) (alteration in original), <u>with, e.g.</u>, <u>Precision Vascular Sys. v. Sarcos L.C.</u>, 199 F. Supp. 2d 1181, 1193 (C.D. Ut. 2002) ("Accounting and disgorgement are remedies under

Koken cites is <u>New L & N Sales & Marketing, Inc. v. Menaged</u>, 1998 U.S. Dist. LEXIS 14008, at *31 (E.D. Pa. Sept. 9, 1998) (declining to grant summary judgment on a count containing a demand for an accounting and a constructive trust, because it was not yet known if a remedy at law would suffice). More recently, though, a Pennsylvania court granted a Rule 12(b)(6) motion to dismiss a self-standing demand for an accounting.  <u>See</u> <u>Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.</u>, 2005 U.S. Dist. LEXIS 6168, at *12–13 (E.D. Pa. Apr. 12, 2005).  As the <u>Chemtech</u> court noted, "[Plaintff] concedes that *there is no independent cause of action for an accounting* and that it is only entitled to an accounting if it prevails on one of its other causes of action[]."  <u>Id.</u> at *11–12 (emphasis added).  Similarly, another Pennsylvania court observed: "Though styled by [Plaintiff] in its complaint as separate causes of action, Count IV seeking an imposition of a constructive trust, and Count V *seeking an accounting*, are equitable remedies, *not causes of action*. <u>Resolution Trust Corp. v. Residential Developers Fund Partners</u>, 1991 U.S. Dist. LEXIS 13068, at *67 (E.D. Pa. Sept. 17, 1991) (emphasis added).

Also important in this analysis are two provisions of the Contract outlining Legion's rights to audit and inspect Aon's books and records relating to Legion insurance policies.  <u>See</u> Mgmt. Agreement §§ 10, 12.  The Contract affords Legion the same rights which Koken seeks to acquire through her demand for an accounting.  The right to an accounting is, for all intents and purposes, provided for, detailed, and governed by the express language of the Contract.  In light of the relevant Pennsylvania case law, as well as the above-cited provisions in the Contract, the Court is persuaded that Koken's demand for an accounting in Count Five cannot be properly maintained as an independent cause of action and should be dismissed.

---

Utah law, not separate causes of action.").

**IV.**

For the reasons stated, Aon's Motion to Dismiss is hereby DENIED as to Count One, but GRANTED as to Counts Two through Five.

An appropriate Order shall issue.


ENTERED this  13th  day of January, 2006


_____/s/_____
James R. Spencer
UNITED STATES DISTRICT JUDGE
